UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

ASHLEY TAKOUNI
    Plaintiff

-vs-                                    Case No.
                                          Hon.
VIKING COLLECTION SERVICE, INC.,
STEVE BELL,
BONDED COLLECTION CORPORATION,

    Defendants.

## COMPLAINT & JURY DEMAND

*Ashley Takouni states the following claims for relief:*

### Jurisdiction

1. This court has jurisdiction under the FDCPA, 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331,1337.

2. This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

### Parties

3. The Plaintiff to this lawsuit is Ashley Takouni who resides in West Bloomfield, Michigan.

4. The Defendants to this lawsuit are as follows:

    a. Viking Collection Service, Inc. ("Viking") which is a corporation doing business in Michigan.

    b. Steve Bell, a debt collector, agent and employee of Viking.

1

      c.      Bonded Collection Corporation, a corporation doing business in Michigan.

### Venue

5. The transactions and occurrences which give rise to this action occurred in Oakland County.

6. Venue is proper in the Eastern District of Michigan.

### General Allegations

7. In October 2009, Bonded Collection Corporation ("Bonded") contacted Ms. Takouni to collect on a PNC (also known as "National City Bank") account ("account").

8. Bonded is a collection agency that represented that it was authorized to collect the account on behalf of National City.

9. Ms. Takouni entered into a Settlement Agreement with Bonded to pay the account for a sum total of $440.41.

10. Under the Settlement Agreement, she authorized Bonded to take three payments of $146.80 from her bank account via electronic transfer on the following dates: October 30, November 13 and December 11.

11. On October 30, 2009, the first payment of $146.80 was transferred from Ms. Takouni's account to Bonded.

12. In November 2009, Viking sent Ms. Takouni a letter seeking to collect the same account that Bonded was collecting.

13. In that letter, Viking represented that;
    a.    it was authorized to collect the account.
    b.    there was $810.13. it was authorized to collect the account; and
    c.    demanded that she pay the account

14. Viking's statement that Ms. Takouni owed $810.13 on the account was a false statement of the character, amount and/or legal status of the account. Ms. Takouni owed less on the account due to the Settlement Agreement.

15. Viking's statement that Ms. Takouni owed $810.13 on the account was false.

16. On November 11, Steve Bell from Viking called Ms. Takouni at work in order to collect the account.

17. Ms. Takouni is a medical receptionist and not allowed to take personal calls at work

18. Ms. Takouni told Collector Bell that she was not allowed to take personal calls at work but stated that she would call him back.

19. Contrary to her instructions, Collector Bell called Ms. Takouni back the very next day on her work number, at two separate times.

20. Defendants placed calls to Ms. Takouni's place of employment when it knew that Ms. Takouni was prohibited from taking such calls.

21. Defendant's calls to Ms. Takouni's workplace were at a place known to be inconvenient to the Defendants.

22. The calls to Ms. Takouni's work place following notice that such calls were prohibited were annoying, abusive and harassing.

23. Ms. Takouni was embarrassed, distressed and worried about her employment standing because of the calls that Collector Bell made to her work place.

24. Ms. Takouni called Collector Bell back after work.

25. Because she had entered into a Settlement Agreement with Bonded, Ms. Takouni questioned

Collector Bell on whether Viking was authorized to collect the call.

26. Ms. Takouni also informed Collector Bell that she had a Settlement Agreement with Bonded.

27. Collector Bell assured Ms. Takouni that Viking now had the account.

28. He also stated that Viking would honor the Settlement Agreement and sought her permission to take the second and third payment under the Settlement Agreement from her account via electronic fund transfers.

29. Ms. Takouni did not authorize the transfer on that date.

30. Ms. Takouni called Bonded and left a message seeking a call back regarding the status of the account.

31. On November 16, Ms. Takouni conducted an online review of her checking account and concluded that Bonded did not transfer the second payment from her account.

32. Ms. Takouni then called Collector Bell and authorized him to take the second (November) and third (December) payment on the Settlement Agreement from her bank account via electronic fund transfer.

33. Ms. Takouni was wrong when she concluded that Bonded had not transferred the second payment. The electronic fund transfer to Bonded occurred late in the business day on November 16, in the amount of $146.80.

34. On November 18, Viking transferred $151.80 from her account.

35. Thus, as of November 18, Ms. Takouni paid more than $440.41 on the account and satisfied her payment obligation under the Settlement Agreement.

36. The transfer by Viking caused Ms. Takouni to be overdrawn on her bank account and to be assessed multiple overdraft charges by her bank.

37. When Ms. Takouni discovered that both collectors had taken money from her account for the second payment, she called Viking.

38. In that call, Ms. Takouni:

    a. expressed concern that she did not know who was the authorized representative of the account;

    b. and withdrew her authorization to take any more money from her account.

39. On December 1, Ms. Takouni spoke to Natasha, a representative of Bonded.

40. Natasha informed Ms. Takouni that Bonded was authorized to collect the account.

41. On December 2, Ms. Takouni spoke to Jamie, a representative of PNC.

42. Jamie told Ms. Takouni that Bonded was the authorized representative of PNC.

43. Ms. Takouni owes no more money on the account.

44. On December 10, Ms. Takouni provided written notice to Viking and Bonded that based on the conflicting statements by Viking, Bonded and PNC, she did not know who was the authorized representative of PNC.

45. She further informed them they were not authorized to take any more money from her bank account.

46. Ms Takouni also demanded:

    a. a full accounting on sums paid on the account;

    b. a written statement naming the party that was authorized to collect on behalf of PNC.

47. Viking has not responded to Ms. Takouni's demand.

48. Bonded has not responded to Ms. Takouni's demand.

49. Viking was not authorized to collect the account and

    a.    its statements that it was so authorized, constitute false and deceptive means of collecting the account; and/or

    b.    it collected amounts not permitted by law.

50.    Alternatively, Bonded was not authorized to collect the account and

    a.    its statements that it was so authorized, constitute false and deceptive means of collecting the account and it collected amounts not permitted; and/or

    b.    it collected amounts not permitted by law.

51.    The conflicting statements by Viking and Bonded as to their representative capacity has caused Ms. Takouni to be confused, distressed and anxious.

## COUNT I – Fair Debt Collection Practices Act (Viking)

52.    Ms. Takouni incorporates the preceding allegations by reference.

53.    At all relevant times Viking – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

54.    Viking is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

55.    At all times relevant to this complaint, Viking sought to collect a "consumer" debt from Ms. Takouni.

56.    Viking actions to collect this alleged debt from Ms. Takouni violated the provisions of the FDCPA including, but not limited to: 15 U.S.C. §1692c(a)(1), c(a)(3), e(2), e(10), f and f(1).

57.    Ms. Takouni has suffered damages as a result of these violations of the FDCPA.

## COUNT II – Michigan Occupational Code (Viking)

58. Ms. Takouni incorporates the preceding allegations by reference.

59. Viking is a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

60. Ms. Takouni is a debtor as that term is defined in M.C.L. § 339.901(f).

61. Viking's foregoing acts in attempting to collect this alleged debt against Ms. Takouni constitute violations of the MOC including but not limited to the following: M.C.L. § 339.915(a), (e), (f), (n) and (q).

62. Ms. Takouni has suffered damages as a result of these violations of the MOC

63. These violations of the MOC were willful.

## COUNT III – Fair Debt Collection Practices Act (Bonded)

64. Ms. Takouni incorporates the preceding allegations by reference.

65. At all relevant times Bonded – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

66. Bonded is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

67. At all times relevant to this complaint, Bonded sought to collect a "consumer" debt from Ms. Takouni.

68. Bonded actions to collect this alleged debt from Ms. Takouni violated the provisions of the FDCPA including, but not limited to: 15 U.S.C. §1692 e e(2), e(10), f and f(1).

69. Ms. Takouni has suffered damages as a result of these violations of the FDCPA.

### COUNT IV – Michigan Occupational Code (Bonded)

70. Ms. Takouni incorporates the preceding allegations by reference.

71. Bonded is a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

72. Ms. Takouni is a debtor as that term is defined in M.C.L. § 339.901(f).

73. Bonded 's foregoing acts in attempting to collect this alleged debt against Ms. Takouni constitute violations of the MOC including but not limited to the following: M.C.L. § 339.915(a), (e), (f) and (q).

74. Ms. Takouni has suffered damages as a result of these violations of the MOC

75. These violations of the MOC were willful.

### Demand for Jury Trial

76. Plaintiff demands trial by jury in this action.

### Demand For Judgment for Relief

77. *Accordingly, Ms. Takouni requests that the Court grant:*

    a. *Equitable relief under statute and common law, in the form of a declaration that the account has been fully satisfied and that Ms. Takouni owes no further sums on the account, and an injunction prohibiting further collection on the account.*

    b. *Actual damages for items including overdraft charges, emotional distress, mental anguish, frustration, humiliation, and embarrassment.*

    c. *Statutory damages.*

    d. *Treble damages.*

    e. *Statutory costs and attorney fees.*

Respectfully Submitted,

By: s/ Julie A. Petrik
Julie A. Petrik (P47131)
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney For Ashley Takouni
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
JuliePetrik@Att.Net

Dated: February 4, 2010